IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CONTRACT ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-882 |
| ) | |
| SENEM ATALAY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on cross motions for summary judgment by Plaintiff Contract Associates, Inc. (Dkt. No. 67) and Defendants Senem Atalay, Michael Spade, and their corporate entities Atalay & Spade Group, LLC and Contract Associates, Inc. of Maryland. Dkt. No. 71. The matter has been fully briefed by the parties. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted.

### I. Background

This controversy arises out of a corporation's claim that two of its former employees breached their fiduciary duties to it and misappropriated trade secrets when they left to form their own competing company. Plaintiff Contract Associates, Inc. ("CAI") is a Virginia corporation engaged as a manufacturer's representative in the office furniture industry. Prior to the events underlying this action, CAI had a number of exclusive regional sales relationships with various manufacturers. Badie Farag is the President and founder of CAI. Defendants include two individuals and two corporate entities: Senem Atalay and Michael Spade, former employees of

1

CAI; Atalay & Spade LLC, the corporation they formed when they left CAI; and Contract Associates, Inc. of Maryland, formed by Spade during his tenure with CAI.

CAI hired Spade and Atalay as full-time sales representatives in 1997 and 2006, respectively. There were no written employment agreements. CAI claims that, in 2011, Farag selected Atalay as his successor and promoted her to partner. Despite making statements in emails to various manufacturer clients ("the Manufacturers") that she was "very excited about the promotion" and "very happy to be a Contract Associates partner," Atalay disputes ever having been a partner of CAI. Pl.'s Opp'n Mot. Summ. J., Ex. 4. Around this same time, CAI increased her share of commissions and purported to issue her shares representing a 25% ownership stake in CAI. In 2013, Atalay was listed as an officer—specifically, as vice president—of CAI in filings with the Virginia State Corporation Commission.

In lieu of salaries, CAI paid Defendants by commission. Farag, Atalay, and Spade pooled the commissions earned from the Manufacturers, regardless of who participated in the actual sale, and then distributed them according to percentages determined by Farag. Spade was responsible for calculating the commission worksheet. He also had check-signing authority on CAI bank accounts as well as authority to negotiate fee agreements with CAI's manufacturer clients.

In 2011, Spade discussed the possibility of starting his own company with the President of Cabot Wrenn, one of CAI's major clients, but nothing materialized. Years later, in May 2014, after learning that Farag's son would be joining CAI and that their commissions would correspondingly be reduced, Defendants decided to form their own company that would engage in the same business and in the same territory as CAI. On June 4, 2014, Spade ordered business cards for the new venture. On the morning of June 5, 2014, Defendants called potential client

Muraflex, which was not nor had ever been a client of CAI, to announce the formation of their new company. Later that afternoon, Defendants tendered their resignations to Farag in person. Within hours of the termination meeting, they called three of CAI's major clients to announce their resignations from CAI and the formation of their new company, Atalay & Spade Group, LLC.

On June 6, 2014, Spade and Atalay contacted the remainder of CAI's clients. Within days of their resignations, three of CAI's major clients—Jofco, JSI, and Nucraft—terminated their agreements with CAI. Each subsequently entered into a manufacturer representative agreement with Defendants. Due to the timing of Defendants' resignations, CAI missed an important trade show called NeoCon, at which CAI's clients were to exhibit their products. Spade and Atalay had been scheduled to attend the conference as representatives of CAI, but eventually attended on behalf of their new company. As a result of the foregoing events, CAI claims it has lost nearly its entire revenue stream.

On June 27, 2014, CAI filed this lawsuit in the Circuit Court of the City of Alexandria, Virginia. On July 14, 2014, Defendants removed the action to this Court. On July 22, 2014, Defendants moved to dismiss the Complaint in its entirety. After hearing oral argument, the Court denied the motion. All parties have now moved for summary judgment.

## II.     Legal Standard

Because this matter comes before the Court on cross-motions for summary judgment, the Court must "review each motion separately on its own merits" and ensure that it "resolve[s] all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted). "One of the principle purposes of the summary judgment rule

is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the Court must bear in mind that "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### III. Analysis

Plaintiff has moved for summary judgment on four of its five claims: breach of fiduciary duties (Count I), tortious interference with existing contracts (Count III), tortious interference with prospective contracts (Count IV), and a violation of the Business Conspiracy Act (Count V). Dkt. No. 67. Defendants have moved for summary judgment on all counts of the Complaint including Count II, which alleges a violation of the Virginia Uniform Trade Secrets Act. The Court's resolution of the motions turns on the following issues: (1) whether their actions constituted a breach of those duties; and (2) whether CAI made reasonable efforts to maintain the secrecy of its alleged trade secrets.

### A. Count I: Breach of Fiduciary Duty

Both Plaintiff and Defendants have moved for summary judgment on Count I. Under Virginia law, to succeed on a claim for breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages resulting from the breach. *Cartensen v. Chrisland Corp.*, 247 Va. 433, 444 (Va. 1994). The Court will assume, without deciding, that Defendants in fact owed a duty to CAI, and thereby focus its analysis on the second element of the claim, which it finds dispositive of the motions.

A plaintiff may demonstrate a breach of the fiduciary duty of loyalty by showing that the defendant "misappropriated trade secrets, misused confidential information, or solicited [CAI's] clients or other employees prior to termination of employment." *Williams v. Dominion Tech. Partners, LLC*, 265 Va. 280, 291 (2003) (citation, brackets, and internal quotation marks omitted). Notably, "[r]esignation or termination does not automatically free a[n] employee from his or her fiduciary obligations." *Today Homes, Inc. v. Williams*, 272 Va. 462, 474 (2006). A breach of fiduciary duty may therefore be found if the conduct began during employment or if the post-termination competition is "founded on information gained during the [employment] relationship." *Id.* (holding defendant's casual knowledge of the existence of certain real estate property during her employment did not show that her later purchase of the property was "founded on information gained during" her employment with the plaintiff).

As Defendants point out, CAI's entire argument on the alleged "use of confidential information" consists of its claim that Defendants "used CAI's client list and contacts and fee rates to solicit CAI's entire roster of clients." Pl.'s SJ Mot. at 17. The record does not reveal, however, any policies or actions taken by CAI to keep this information confidential besides "hiring what I thought were honest decent people with a high level of integrity." Farag Dep.

5

54:21–55:3. Rather than explicitly instructing Defendants to keep CAI's information confidential, Farag testified that there was an unspoken "ethical standard that was understood between the three of us." Farag Dep. 55:15–56:4. Additionally, CAI's allegedly confidential "discount structures" were communicated via email to third parties, the Manufacturers. Farag Dep. 50:14–19, 52:9–13. CAI has thus failed to offer any evidence that its client list and fee rates were in fact kept confidential, and therefore it may not base its breach of fiduciary duty claim on the alleged misuse of confidential information.[1]

CAI's only remaining method of proving breach is by showing that Defendants "solicited [its] clients or other employees prior to termination of employment." *Williams*, 265 Va. at 291. Although it is true that "an employee has the right to make arrangements during his employment to compete with his employer after resigning his post," the right is "not absolute." *Williams*, 265 Va. at 289 (reversing trial court ruling in which jury found employee had breached his fiduciary duty by communicating with a competitor of his employer and arranging to become its employee upon his resignation). "Whether specific conduct taken prior to resignation breaches a fiduciary duty requires a case by case analysis." *Id.* (quoting *Feddeman & Co. v. Langan Assoc.*, 260 Va. 35, 42 (2000)). In this case, the only relevant evidence of pre-termination conduct on the record is: (1) Spade's phone call in 2011 to the president of one of CAI's major clients, Cabot Wrenn, stating that he was considering starting his own company; (2) Defendants' call to Muraflex, which was not an existing client of CAI, a few hours before the termination meeting stating that they had resigned from CAI and formed a new company; and (3) Spade's ordering of business cards the day before the termination meeting.

---

[1] Notably, CAI has not invoked Defendants' alleged misappropriation of trade secrets as a basis to sustain its breach of fiduciary duty claim. As a result, the Court will not consider any such argument in its analysis of Count I. Even if CAI had raised the issue, it would not have made a difference. As discussed in more detail in Part III.B *infra*, the Court finds that the record does not support CAI's substantive trade secrets claim in Count II.

The case cited by Defendants is instructive. In *Integrity Auto Specialists v. Meyer*, the defendant planned to leave his employer and start his own competing business. 83 Va. Cir. 119, at *1 (Chesapeake Cir. Ct. 2011). Before resigning, he contacted the managers of all of his employer's clients and informed them that he was leaving the company. *Id.* In response to the clients' "inquiries," the defendant "revealed that he was leaving to start his own [competing] company, which would be 'up and running' within a month." *Id.* In addition, the defendant obtained a business license before terminating his employment. *Id.* at *6. After resigning, the defendant serviced two of his former employer's clients. *Id.* at *1. The Virginia Circuit Court found that these facts did not establish a breach of fiduciary duties because there was no pre-termination "solicitation or active attempts" by the defendant to "divert" his employer's business to himself. *Id.* at *6. It went on to state that the defendant's pre-termination actions were permissible "arrangements made during his employment in contemplation of post-termination competition with his employer." *Id.* In so holding, the court emphasized that "the law of this Commonwealth is generally permissive of 'rough-and-tumble' conduct in the employment marketplace." *Id.* (citing *Williams*, 265 Va. at 290).

Likewise here, even when viewing the facts in the light most favorable to CAI, Defendants' actions prior to their resignations were at most arrangements in contemplation of future competition with CAI, not active solicitation attempts. Like in *Meyer*, where the defendant obtained his business license prior to resigning, Spade ordered business cards for the new company prior to the termination meeting. However, whereas the defendant in *Meyer* called his employer's *current* clients to inform them that he would be resigning and forming his own company prior to resigning, Spade communicated the same message to Muraflex, which had

never been a client of CAI's nor was likely to be.[2] The distinction is important, as it appears that only the pre-termination solicitation of an employer's *existing* clients has been held as sufficient to establish a breach of fiduciary duties. *Id.*; *see also Williams*, 265 Va. at 291; *Nat'l Legal Research Grp. v. Lathan*, Civil No. 92-0031-C, 1993 WL 169789, at *5–7 (W.D. Va. May 17, 1993), *aff'd*, 42 F.3d 1386 (4th Cir. 1994) (holding employee's "diversion of [employer's] clients while he was still employed by the Group ... resulted in a clear breach of his duty of loyalty to [the employer]"). Nevertheless, even assuming that the solicitation of a *prospective* client is actionable, Spade's actions did not go beyond the "arrangements" that the court in *Meyer* held fell short of establishing a breach of fiduciary duty. Drawing guidance from the decision in *Meyer*, and in light of Virginia's tolerance of "rough-and-tumble conduct in the employment marketplace," the Court finds and concludes as a matter of law that Defendants' pre-resignation conduct does not rise to the level of establishing a breach of their fiduciary duties under Virginia law. *See Meyer*, 83 Va. Cir. 119, at *6. Defendants are therefore entitled to summary judgment on Count I.

## B. Count II: Virginia Uniform Trade Secrets Act

Defendants have also moved for summary judgment on CAI's Virginia Uniform Trade Secrets Act ("VUTSA") claim, arguing that CAI has presented "no evidence of any alleged trade secrets, how ... any alleged secrets were kept confidential, or how the alleged trade secrets were misappropriated." Defs.' Reply Br. at 7.

To prevail on a claim under the VUTSA, a plaintiff "must identify, with particularity, each trade secret it claims was misappropriated." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331

---

[2] Spade states in his declaration that "CAI attempted to become Muraflex's representative ... in January 2014, but Muraflex rejected the offer." Spade Decl. ¶ 9. Farag's testimony on the extent of CAI's relationship with Muraflex is not inconsistent with this account: "[CAI] had conversations about Muraflex ... maybe six, nine months before [Defendants' resignation], intermittently, on a number of occasions, because it is a company that was on the radar screen that we wanted to represent." Farag Dep. 89:19–90:3.

F. Supp. 2d 396, 418 (E.D. Va. 2004). "The crucial characteristic of a trade secret is secrecy rather than novelty." *Dionne v. Se. Foam Converting & Packaging, Inc.*, 240 Va. 297, 302 (1990). Accordingly, liability may only be imposed under the statute if the plaintiff "took reasonable efforts to maintain the secrecy of its alleged trade secrets." *Young Design, Inc. v. Teletronics Int'l, Inc.*, No. Civ.A.00-970-A, 2001 WL 35804500, at *4, 6 (E.D. Va. July 31, 2001) (citing Va. Code. Ann. § 59.1-336). "Restricting access to information, implementing confidentiality agreements, and providing physical barriers to access are all reasonable efforts." *MicroStrategy*, 331 F. Supp. 2d at 416. Conversely, if the alleged trade secret is "disclosed to others, such as customers, or the general public, who are under no obligation to protect [its] confidentiality," a claim under the VUTSA cannot lie. *Advanced Computer Servs., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 370 (E.D. Va. 1994) (citation and internal quotation marks omitted).

In support of their argument, Defendants rely on *Young Design*, a case in which the plaintiff argued that an implied confidentiality agreement had been created through an alleged "informal, off-the-cuff gentleman's agreement . . . ." 2001 WL 35804500, at *5–6. The evidence presented during a three-day bench trial revealed, however, that the plaintiff had failed to ask the defendant for an "explicit commitment" to keep its technology confidential, and that there were "no proprietary use warnings on invoices, no letters or emails reminding defendant about the confidentiality obligations, and no evidence of oral discussions" with defendant about the existence of a confidentiality policy. *Id.* at *5. Based on these facts, this Court held that the plaintiff's alleged informal agreement did not in fact "establish an express or implied confidentiality agreement," nor did it represent a reasonable step taken to protect the alleged trade secrets. *See id.* at *5–9.

9

Likewise here, it is clear that CAI has failed to produce any evidence to support a key element of its VUTSA claim—secrecy. In its interrogatory responses, CAI identified its trade secrets as "sales reports, client lists, personal contact information for customers, business development plans, sales data, pricing information, marketing materials business, know-how, and methods and procedures developed by Contract Associates." Defs.' SJ Mot., Ex. 30 at No. 10. As discussed above, *supra* Part III.A, CAI has not pointed to any facts on the record that show that it had a confidentiality policy or took action to keep this information secret. When asked specifically what efforts CAI made to protect the confidentiality of its trade secrets, Farag responded "[a]side from hiring what I thought were honest decent people with a high level of integrity, nothing." Farag Dep. 54:21–55:3. Rather than explicitly instructing Defendants to keep CAI's information confidential, Farag testified that there was an unspoken "ethical standard that was understood between the three of us." Farag Dep. 55:15–56:4.

Thus, like in *Young Design*, there is no evidence that CAI asked Defendants for a "specific commitment" to protect the secrecy of its alleged trade secrets, that CAI reminded them of their confidentiality obligations, or that it had a confidentiality policy. 2001 WL 35804500, at *5. In the Court's view, an unspoken "ethical standard" purported to be understood by the parties is equivalent to the "informal, off-the-cuff gentleman's agreement" that this Court previously held was insufficient to create an implied confidentiality agreement that would satisfy the secrecy element of a VUTSA claim. Additionally, CAI's allegedly confidential "discount structures" were communicated via email to the Manufacturers, thereby destroying that information's trade secret status as there is no evidence that the Manufacturers were bound to protect the confidentiality of that information. Farag Dep. 50:14–19; 52:9–13; *accord Advanced Computer*, 845 F. Supp. at 370. Even when viewing the facts in the light most favorable to CAI,

the record lacks any evidence that CAI's client list, fee rates, and other alleged trade secrets were in fact kept confidential. Accordingly, because CAI has failed to raise a genuine dispute of material fact on the key element of secrecy, summary judgment will be granted to Defendants on the VUTSA claim.

### C. Counts III & IV: Tortious Interference with Contractual Relationships and Business Expectancy

Both sides also seek summary judgment on the tortious interference claims. To succeed on these claims, CAI must prove: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." *Williams*, 265 Va. at 289 (quoting *Glass v. Glass*, 228 Va. 39, 51–52 (1984)). If, like here, the plaintiff alleges tortious interference with a contract terminable at will or business expectancy, the plaintiff must also prove that the defendant employed "improper methods." *E.g.*, *Duggin v. Adams*, 234 Va. 221, 227 (1987) (citation omitted); *Glass*, 228 Va. at 51–52 (recognizing intentional misconduct as element of claim for tortious interference with prospective business advantage). Improper methods consist of "illegal or independently tortious" conduct, such as "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Duggin*, 234 Va. at 227 (citations omitted).

Because all of the contracts CAI had with the Manufacturers were at will,[3] it must prove that Defendants employed improper methods in tortiously interfering with such contracts. Defs.'

---

[3] The Court is doubtful that there was in fact a business expectancy between CAI and Muraflex because Muraflex had rejected CAI's services as recently as January 2014. Spade Decl. ¶ 9; *cf. Moore v. United Int'l Investigative Servs., Inc.*, 209 F. Supp. 2d 611, 619–20 (E.D. Va. 2002) (holding that, to prove a business expectancy, a party

SJ Mot., Ex. 7 ¶ 69 (CAI admission that all contracts were "at-will"). As Defendants note, the only conduct asserted by CAI to have constituted improper methods is the same conduct underlying Counts I and II—the breach of fiduciary duty and VUTSA claims. Compl. ¶¶ 58, 62. Because the Court has already held that the evidence is insufficient to create a genuine issue of material fact on these two claims, CAI's tortious interference claims must also fail. *See Williams*, 265 Va. at 292 (reversing jury verdict on tortious interference and business conspiracy claims "[b]ecause the same conduct was alleged to constitute the proof" of both those claims and plaintiff's unsuccessful breach of fiduciary duty claim).

### D. Count V: Statutory Business Conspiracy

Finally, both CAI and Defendants seek summary judgment on CAI's statutory business conspiracy claim. To survive summary judgment, CAI must prove: (1) a combination of two or more persons; (2) for the purpose of willfully and maliciously injuring plaintiff in his business; and (3) resulting damage to plaintiff. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984) (citing Va. Code Ann. §§ 18.2-499–500). CAI must also establish, by clear and convincing evidence, legal malice—in other words, that the conspirators committed an intentional act "that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014); *accord Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526 (4th Cir. 1997). A conclusion that Defendants' actions constituted tortious interference or a breach of their fiduciary duties would satisfy this "unlawful act" element of the business conspiracy claim. *Id.* at 218–19.

The undisputed facts in this case demonstrate that Spade and Atalay were two persons whose actions very likely caused damage to CAI in that they induced several major clients to

---

must show "something that is a concrete move in [the] direction of" a contractual relationship). CAI has not pointed to any evidence that shows its relationship with Muraflex was moving in the direction of a contract.

terminate their contracts with CAI and conduct business with them instead. However, the Complaint and the various pleadings establish that CAI's business conspiracy claim rests entirely upon a finding of either tortious interference or misappropriation of trade secrets as the requisite unlawful act. Because the Court has already found that there is insufficient evidence to support either theory of recovery, the unlawful act element has not been met. This claim too, then, must fail.

IV. **Conclusion**

For the foregoing reasons, and for good cause, Plaintiff's Motion for Summary Judgment will be denied, and Defendants' Motion for Summary Judgment will be granted.

An appropriate Order shall issue.

April 10, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

13